**OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, LOCAL 2-124, Plaintiff,**

v.

**AMERICAN OIL COMPANY, a Maryland Corporation, Defendant.**

**No. C74-44.**

United States District Court,
D. Wyoming.

Jan. 28, 1975.

Harry E. Leimback of Leimback, Aspinwall & Hofer, Casper, Wyo., for plaintiff.

Herbert C. Snyder, Jr., of Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., and George M. Porter of Wehrli & Williams, Casper, Wyo., for defendant.

KERR, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above-entitled matter coming on regularly for hearing before the Court, the plaintiff appearing by and through its attorney Harry E. Leimback of the firm of Leimback, Aspinwall & Hofer, and the defendant appearing by and through its attorneys Herbert C. Snyder, Jr., of the firm of Barnes, Hickam, Pantzer & Boyd, and George M. Porter of the firm of Wehrli & Williams, and the Court having heard the evidence offered for and on behalf of the plaintiff and the evidence adduced for and on behalf of the defendant and having taken said matter under advisement, and having considered the testimony, the exhibits and the memorandum filed on behalf of each of the parties, and being fully advised in the premises, hereby makes the following:

## FINDINGS OF FACT

1. This action is brought by the plaintiff for enforcement of a promise to arbitrate certain disputes in a collective bargaining agreement between the plaintiff and the defendant or, in the alternative, for enforcement of certain alleged rights of an employee under the collective bargaining agreement.

2. The plaintiff Oil, Chemical and Atomic Workers International Union, Local 2–124 ("Union") is a labor organization which represents certain employees of the defendant at its Casper, Wyoming, refinery and distribution center.

3. The defendant American Oil Company ("Company") is a Maryland corporation.

4. The Union and the Company were parties to a certain Working Agreement effective from March 6, 1973, through January 7, 1975, covering certain employees of the Company in the marketing distribution center at its Casper, Wyoming, refinery.

5. Jack R. Street ("Street") was employed by the Company as a truck driver in the unit covered by the Working Agreement referred to above during the period from July 27, 1949, until January 1, 1974. On the latter date, Street was placed on disability retirement. Street's date of birth is July 25, 1928, so that his age at retirement was 45 years.

6. On or about November 23, 1966, while at work for the Company, Street fell and suffered a back injury.

7. In or about 1956, Street had undergone a spinal fusion as a result of an earlier injury.

8. Street missed several days' work following the 1966 fall. Thereafter through the end of 1969, Street was repeatedly absent from work on account of low back pain, stiffness and other symptoms apparently related to the 1966 injury. Street's last day of work was December 24, 1969.

9. On or about January 5, 1970, Street was examined by an orthopedic specialist at the Company's request. The specialist found that Street should

not drive a truck and recommended that he be granted a partial disability retirement.

10. Since the beginning of 1970, Street has made several requests that he be returned to work. The Company has denied each request on the ground that he is not able physically to perform the job as a truck driver for the Company.

11. The Company has published written medical standards for its employees. The standards provide in pertinent part:

"Abnormalities of structure or range of motion of back or extremities . . . require evaluation mainly in terms of the job family for which the patient is being examined. . . . The examinee may be approvable if:

a. He can perform anticipated work without risk to himself or to others, and

b. The cause of the crippling is not a progressive one which in itself would disqualify him (such as active rheumatoid arthritis, or inadequately treated or untreatable unstable low back).

c. . . . .

d. Drivers, however, (truck drivers, etc.) may not be approved if there is any loss, or impairment in use of, hands, arms, feet, legs, fingers, or other structural element."

12. The truck driving job to which Street had been assigned included unloading, in addition to the driving duties. A single load often amounted to 40,000 pounds of the Company's products. The load included packages and boxes weighing from 25 to 100 pounds. It also included barrels which weigh 50 pounds when empty and 325 pounds when filled. The driver often had to unload the entire load without help. In addition, the driver could be expected to encounter various road emergencies which he would be expected to handle and which might require heavy exertion, such as shoveling snow, changing tires or mounting snow chains.

13. On or about June 28, 1973, the Union presented a grievance to the Company pursuant to the contract grievance procedure in which the Union demanded that Street be returned to work and that he "be dispatched in accordance with his seniority." The grievance was appealed to the second step of the grievance procedure by letter dated July 20, 1973, and on or about September 12, 1973, the Union sought arbitration of the grievance. The Company refused arbitration on the ground that the grievance presented an issue pertaining to the retirement plan, one of the Company's employee benefit plans, and that issues pertaining to benefit plans are expressly excluded from arbitration by the agreement.

14. Section 3:2 of the Working Agreement provides:

"Questions pertaining to the application, interpretation, or alleged violation of the Working Agreement or any written Supplemental Agreement thereto or arbitration award, or disputes concerning disciplinary action resulting in loss of pay shall be eligible for referral to arbitration."

15. Article XI of the Working Agreement provides in pertinent part:

"This Agreement shall in no way affect the status of employees under employee benefit plans, such as retirement plans. . . . It is agreed that issues pertaining to benefit plans may be bargained upon through the procedure set forth in Article II. It is further agreed that neither party shall have the right to have any such issue arbitrated."

16. The Company's retirement plan expressly reserves to the Company the right "with or without application of the participant [employee], to retire any participant who is, on the basis of medical evidence satisfactory to the Company, physically or mentally disabled for work with the Company."

17. The language quoted above has been in the Company's retirement plan since prior to Street's employment by the Company. The right to retire employees on grounds of disability, with or without their application, which necessarily means with or without their

agreement or consent, has been exercised many times by the Company.

18. As of December 31, 1973, there were approximately 14,800 retirees under the Company's retirement plan, of whom 827 were on disability retirement.

19. The Working Agreement between the Company and the Union contains no provision which restricts the exercise of the Company's right to retire employees on disability retirement.

20. The Company has no other job available for which Street is physically or otherwise qualified.

21. Street was examined by several doctors on numerous occasions between the time of his injury in 1966 and January 1, 1974. While on some of the occasions the doctors gave Street releases for return to work, there is substantial evidence to support the Company's conclusion that Street's back condition rendered him unfit to perform the job as a truck driver for the Company and that he would be placed on disability retirement. Of greatest significance are the findings and recommendations of more than one of the doctors who examined Street that he suffered a permanent partial disability of more than ten per cent of the body as a whole because of his back condition, that he should not drive a truck, that he should be assigned light or sedentary duty and that recurrence of his low back pain and related symptoms was probable.

22. The Company provides its employees with a Sickness and Disability Benefits Plan entirely at Company expense. In the case of disability resulting from an occupational injury or illness the plan provides benefits equal to an employee's regular earnings for the first twelve weeks of disability and benefits equal to one-half the employee's regular earnings for up to forty additional weeks of disability. The plan also provides benefits for non-occupational disability which, in the case of an employee with ten or more years of service, are twelve weeks at full pay and forty weeks at half pay. An employee who has received all the benefits available under the occupational disability provisions of the plan and who is absent from work because of the same occupational disability may then receive any non-occupational disability benefits for which he is eligible.

23. Prior to his retirement by the Company, Street exhausted his benefit eligibility under the Company's Sickness and Disability Benefit Plan. Thus, in 1969, the last year he actually worked for the Company, Street received full pay for more than twenty-eight days of absence, which amounted to $1,491.64. In 1970, he received $8,294.66 in sickness and disability benefits. In addition, he received full pay for five weeks of vacation, which amounted to $1,329.25. In 1971, Street received sickness and disability benefits of $5,848.89 and again received $1,329.25 in vacation pay.

24. In addition to sickness and disability benefits the Company also provides disability benefits under a Long-Term Disability Benefit Plan. The plan provides benefits equal to sixty per cent of the employee's basic earnings for as long as he remains totally disabled. Total disability is defined for the first two years of disability as being unable to perform the employee's own or a comparable job with the Company. Thereafter, the employee is considered totally disabled only if he is unable to work at any "reasonable occupation," which is defined as any gainful activity for which he is fitted or may become fitted by education, training or experience.

25. Street applied for and received long-term disability benefits during the two-year period commencing December 7, 1971, and ending December 6, 1973. During this period he received $691.24 per month.

26. Commencing with his retirement on January 1, 1974, Street was eligible to receive a retirement benefit of approximately $210.00 per month. He has not actually received any retirement benefit to date. only because he refused to sign various papers, including a request for retirement benefit, which were tendered to him on or about December

12, 1973. His refusal to sign the papers constituted an election to defer receipt of his retirement benefits until his normal retirement date, which will occur upon his reaching age sixty-five. However, he may still apply for and receive immediately payment of his retirement benefit. Street may obtain other gainful employment without affecting his eligibility to receive the retirement benefit under the Company's retirement plan.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of this action under Section 301 of the Taft-Hartley Act, 29 U.S.C.A. § 185 (1965), and 28 U.S.C.A. § 1337 (1962).

2. The Company is not required to arbitrate the grievance presented by the Union on or about June 28, 1973, on behalf of Jack Street. The grievance clearly presents the issue of whether or not the Company properly exercised its right to retire an employee on the ground of physical disability. That right has been reserved to the Company expressly in the retirement plan. The collective bargaining agreement under which the Union seeks arbitration provides that issues pertaining to the Company's employee benefit plans, including the retirement plan, are not subject to arbitration, even though they may be submitted to the grievance procedure established by the agreement. Therefore, the grievance is not within the Company's agreement to arbitrate disputes with the Union.

3. The Company's action of placing Street on disability retirement did not violate any of his rights under the collective bargaining agreement. There is no provision in the agreement which limits or restricts the Company's exercise of its right to retire employees on the ground of disability. The facts that the retirement plan has included the express reservation of that right for many years, that the right has been exercised by the Company on numerous occasions and that the Union has not obtained a limitation of the right through collective bargaining precludes the Court from implying such a limitation in the collective bargaining agreement. Moreover, the agreement itself expressly provides that it "shall in no way affect the status of employees under . . . [the] retirement plan." The provision of the retirement plan which reserves to the Company the right to retire employees on the ground of disability was itself a term or condition of Street's contract of employment. There is no evidence that the Company's determination of Street's disability was made arbitrarily or capriciously or without substantial medical evidence to support it.

4. The Company has a valid and legitimate interest in seeing to it that its employees are physically able to perform their jobs without unnecessary risk of injury to themselves or to others. The importance of minimizing such risks is nowhere more important than it is in respect of the selection of drivers to operate the Company's trucks upon the public highways. The Company's medical standards for employees are an appropriate and reasonable means to accomplish the minimization of risk. The Company's judgment in applying those standards to specific cases should not be reversed in the absence of convincing evidence of arbitrary or capricious exercise thereof.

5. Street has suffered no legal injury as a result of his retirement by the Company. His employment was at all times subject to the Company's right to retire him for disability. His right to receive the retirement benefit from the Company will not be affected by his taking other gainful employment within his physical limitations. Therefore, he has received and will continue to receive the benefit of the bargain which was made by his contract of employment.

6. The plaintiff is not entitled to relief on the basis of the facts alleged in the complaint and the proof presented at trial.

7. Judgment will be entered for the defendant American Oil Company dismissing the complaint together with the cause, parties to pay their own costs.